UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| B. JOANNA STROUD, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the )<br>Social Security Administration, )<br>      Defendant. ) | CAUSE NO.: 2:14-CV-52-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on February 19, 2014, and a Plaintiff's Brief in Support of Motion for Summary Judgment [DE14] filed on July 11, 2014. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On November 3, 2014, the Commissioner filed a response, and on November 17, 2014, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On October 15, 2010, Plaintiff filed an application for disability insurance benefits with the Social Security Administration alleging that she became disabled on August 14, 2009. Plaintiff's application was denied initially and upon reconsideration. On June 12, 2012, Administrative Law Judge ("ALJ") Edward P. Studzinski held a hearing at which Plaintiff, with an attorney, Plaintiff's husband, and a vocational expert ("VE") testified. On June 21, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. On December 27, 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since August 14, 2009, her alleged onset date.

3. The claimant has the severe impairment of degenerative disc disease of the cervical spine.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that the claimant is able to occasionally lift and carry up to twenty pounds and frequently lift and carry up to ten pounds. She has no limitations on her ability to sit, stand, or walk. She is unable to climb ladders, ropes, or scaffolds. She must avoid hazardous environments (an inability to drive as part of her work duties, no operating moving machinery, no work around exposed flames or at unprotected heights, no work around unprotected large bodies of water) and she must avoid concentrated exposure to unguarded hazardous machinery. She must have no static maintenance of her neck other than the neutral position and she must have no repetitive or extreme flexion, extension, or rotation to the right of her neck. She is to have no overhead use of her upper right extremity and no forceful repetitive gross manipulation with her right hand. She is limited to simple, routine, repetitive tasks.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on February 25, 1959, and was 50 years old, which is defined as an individual approaching advanced age, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

national economy that the claimant can perform.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

Plaintiff has been diagnosed with fibromyalgia, multi-level disc disease and osteoarthritis in her neck and shoulders causing neck stiffness, headaches (including migraine headaches), difficulty turning her head, and pain in her neck and shoulders. Plaintiff first sought treatment for neck pain with her primary care physician, Dr. Christopher McIntire, in March 2010, and saw him consistently for treatment. He also referred Plaintiff to a pain clinic, and she was treated there by Dr. Shariq Ibrahim. Her first bilateral facet injection provided some relief of her pain, but not for the full six months as intended, and a trigger point injection was not successful. She also took medications, some of which caused drowsiness. When treatment was not resolving Plaintiff's symptoms, Dr. McIntire opined that Plaintiff was unable to work and recommended that she seek disability.

In February 2011, Dr. McIntire wrote a Medical Source Statement for Plaintiff that recommended serious physical limitations on her ability to work, including postural and strength limitations and limitations on the amount of time she could sit and stand a time. He also notes that Plaintiff kept her head tilted to the side at all times and required neck support when sitting.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and

indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55

F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not

disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's Residual Functional Capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

### A. Credibility Assessment

Plaintiff argues that the ALJ improperly evaluated her credibility. The Commissioner argues

that the ALJ's opinion is supported by substantial evidence.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv)The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

Plaintiff argues that the ALJ's credibility determination impermissibly relied on boilerplate

7

language; specifically citing the ALJ's statement that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." If the sentence cited by Plaintiff encompassed the totality of the credibility finding in the ALJ's decision, it would indeed be improper. *See Bjornson v. Astrue*, 671 F.3d 640, 645, 647 (7th Cir. 2012); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). However, the ALJ explained which parts of Plaintiff's testimony he found credible and consistent with the rest of the record. In particular, as the Commissioner argues, the ALJ addressed Plaintiff's treatment history and clinical results, as well as her daily activities. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) ("If the ALJ has otherwise explained his conclusion adequately, the inclusion of this [boilerplate] language can be harmless. Here, the ALJ did offer reasons grounded in the evidence.").

Plaintiff also argues that the ALJ erred in discounting Plaintiff's reports of fatigue as a side-effect of her medication. The ALJ discounted Plaintiff's reports of fatigue and frequent napping because "treatment records do not document that she consistently expressed such complaints to treating and examining physicians or requested that her medications be adjusted." AR 25. However, the record does, in fact, contain evidence that Plaintiff complained to her physician about fatigue and tried other medications that were less successful. The Seventh Circuit Court of Appeals has expressed "skeptic[ism] that a claimant's failure to identify side effects undermines her credibility–after all, not everyone experiences side effects from a given medication, and some patients may not complain because the benefits of a particular drug outweigh its side effects." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

The ALJ also relied on Plaintiff's daily activities as an indication that she suffers fewer

8

limitations than alleged, but his characterization of her daily activities is different than the evidence in the record. For example, the ALJ mentioned that Plaintiff goes to the grocery store if her headaches ease and does light shopping without help or encouragement, but did not mention Plaintiff's testimony that she has trouble lifting a gallon of milk and does the grocery shopping with her husband. AR 66-67. The ALJ also noted that Plaintiff can bathe and prepare complete meals but did not mention Plaintiff's reports that she sometimes struggles to wash her own hair because she cannot lift her arms high enough, and needs help lifting heavy meats and emptying pots and pans. AR 186-187. In short, the ALJ mischaracterized Plaintiff's daily activities and omitted important limitations. The Seventh Circuit Court of Appeals has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of his personal hygiene, children, or household chores, as these alone are not sound bases for a credibility determination. *See, e.g., Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities. The ALJ here ignored [the plaintiff]'s numerous qualifications regarding [his] daily activities" and methods of coping with pain); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2006) ("The administrative law judge's casual equating of household work to work in the labor market cannot stand."); *Zurawski*, 245 F.3d at 887 (asserting that daily activities, such as doing laundry, helping children prepare for school, cooking, and washing dishes do not necessarily undermine or contradict a claim of disabling pain). To the extent that the ALJ was also using Plaintiff's ability to perform some activities of daily living with assistance indicate an ability to work, the Seventh Circuit has repeatedly emphasized that a person's ability to perform daily activities does not indicate an ability to work outside of the home. *See, e.g., Bjornson*, 671 F.3d at 647 ("The critical differences between activities of daily living and activities in a full-time

9

job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as []he would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The Plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

Finally, Plaintiff argues that the ALJ impermissibly dismissed her husband's testimony. The ALJ gave several reasons for not considering Mr. Stroud's testimony, stating correctly that he is not an "acceptable medical source" to establish plaintiff's severe impairments, in accordance with 20 C.F.R. § 404.1513(d)(1) and SSR 06-03p. However, the ALJ failed to mention that Mr. Stroud's testimony should have been considered under a different paragraph of the same subsections of the regulations. *See* 20 C.F.R. § 404.1513(d)(4) ("In addition to evidence from the acceptable medical sources . . . we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include . . . (4) Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy."). Plaintiff was not relying on her husband as a medical source, and the ALJ erred in his statement that Mr. Stroud was not an acceptable source to show the severity of Plaintiff's

impairments. The ALJ did state that he took Mr. Stroud's testimony into consideration, but does not explain the weight he gave it or how it affected his assessment of Plaintiff's credibility or RFC, leaving the Court unable to conclude that the ALJ adequately followed the law or made a reasoned and supported decision. SSR 06-03P, 2006 WL 2329939, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning."); *see also Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012); *Beardsley*, 758 F.3d at 837 (7th Cir. 2014).

The ALJ improperly discounted fatigue as a side effect of Plaintiff's medications, mischaracterized her daily activities and relied on them too heavily as evidence of her ability to work, and improperly classified her husband as an unacceptable source. On remand, the ALJ is directed to fully consider the testimony of Plaintiff and other acceptable sources in compliance with the applicable law and directives.

**B.      Residual Functional Capacity**

Plaintiff argues that the ALJ's RFC assessment was incomplete and not properly determined. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical

11

> facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Plaintiff argues that the ALJ failed to properly evaluate the opinions of Plaintiff's treating physician. The ALJ discounted the records from Dr. McIntire, a primary care physician who had been treating Plaintiff for several years. Dr. McIntire completed a questionnaire addressing Plaintiff's specific limitations and remaining capacity to work, and also opined that Plaintiff was disabled.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the

opinion." SSR 96-2p, 1996 WL 374188 at *3. Likewise, an ALJ may not simply ignore an opinion that addresses a plaintiff's ability to work, but must "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3, *5 (July 2, 1996); *see also Hamilton v. Colvin*, 525 F. App'x 433, 438-39 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' [her] reasons." *Elder,* 529 F.3d at 415 (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Punzio*, 630 F.3d at 710 ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be

13

given for that decision."); *Schmidt v. Astrue*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if it . . . 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.'") (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

The ALJ stated that he gave little weight to Dr. McIntire because of his apparent sympathy for Plaintiff, as revealed by his opinion that Plaintiff should seek disability benefits and by his completion of a questionnaire indicating the limitations on Plaintiff's ability to work. He also stated that Dr. McIntire's opinion was inconsistent with the record because Plaintiff's reported limitations were inconsistent with his clinical and diagnostic findings. In particular, the ALJ noted that Plaintiff had no loss of motor or grip strength or inability to ambulate effectively. The ALJ did not explain why Plaintiff's ability to walk meant that she does not suffer from headaches or pain in her neck and shoulders, nor how occasional reports of normal range of motion or nearly normal range of motion for short periods after injections called into question all of Dr. McIntire's diagnoses and reports of Plaintiff's limitations. This failure of explanation raises concerns that the ALJ was substituting his own medical opinion for the evidence in the record. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *see also Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

In addition to discounting the opinion of Dr. McIntire, the ALJ also gave little weight to the opinion of consultative medical examiner Dr. Smejkal as unsupported by other clinical examinations, but again does not identify those contrary examinations. It appears that the ALJ

14

disregarded or gave little weight to the opinions of Plaintiff's treating and examining physician and instead relied on the opinion of the non-examining agency physician. *See Latkowski v. Barnhart*, 93 F. App'x 963, 969 (7th Cir. 2004) ("If the ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ must support that decision with 'good reasons.' The contrary opinion of a non-examining physician, in and of itself, is not sufficient reason to reject the opinion of the treating physician.") (citing 20 C.F.R. § 404.1527(c)(2)).

Plaintiff argues that the ALJ also impermissibly discounted the supporting evidence of pain specialist Dr. Ibrahim. Much as the ALJ chose a few examinations when Plaintiff's range of motion was somewhat normal to discount Dr. McIntire's reports of her consistent limitations, the ALJ also emphasized a few notes from Dr. Ibrahim in which injections seemed to help Plaintiff. However, he failed to include the follow up notes stating that subsequent injections were not as successful and that Plaintiff continued to complain of tenderness and tightness in her neck. The Seventh Circuit Court of Appeals has warned ALJs against cherry-picking evidence in the record to find improvement. "An ALJ cannot rely only on the evidence that supports her opinion." *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (quoting *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

15

Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. In this case, the ALJ failed to give controlling weight to the treating physician's opinion regarding the nature and severity of Plaintiff's impairments without explaining how his opinion was inconsistent with other substantial evidence in the record, did not identify any medical opinion from a treating or examining physician to which he gave greater weight, and failed to adequately identify the evidence on which he based the conclusion that Plaintiff was capable of performing the almost complete range of light work as described in his opinion. On remand, the ALJ is directed to fully weigh the medical evidence, including an appropriate analysis of the evidence from Plaintiff's treating and examining physicians.

**C.    Vocational Expert**

Plaintiff argues that the ALJ's flawed RFC assessment caused him to pose a flawed hypothetical to the VE. When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543.

In this case, the ALJ posed a hypothetical that addressed whether an individual could perform light work with certain limitations on the neck and the right arm and hand. Plaintiff argues

16

that the hypothetical question was insufficient because it did not address Plaintiff's need to hold her neck to the side, need for head support, or restricted range of motions in both arms. The case is being remanded for other reasons described above, and new VE testimony will need to be obtained based on the appropriate RFC findings. The ALJ is cautioned that he must incorporate all relevant limitations in his questioning of the VE.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Motion for Summary Judgment [DE14] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 26th day of August, 2015.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record